DYK, Circuit Judge,
concurring-in-part and dissenting-in-part.
I join the majority’s opinion insofar as it holds that claims 15, 16 and 22-26 of the RE'119 patent did not impermissibly recapture the embodiment with only one sensing electrode. I dissent insofar as the majority holds that the reissue patent’s claims 15-26, which claim the unconditional embodiment, did not violate the recapture rule, because I believe they im-permissibly recapture the unconditional embodiment.
The recapture rule provides that an applicant may not regain, through reissue, subject matter that was deliberately surrendered during prosecution of the original patent in order to avoid a prior art rejection. In re Clement, 131 F.3d 1464, 1468 (Fed.Cir.1997). The recapture rule involves a three-step process: “(1) first, we determine whether, and in what respect, the reissue claims are broader in scope than the original patent claims; (2) next, we determine whether the broader aspects of the reissue claims relate to subject matter surrendered in the original prosecution; and (3) finally, we determine whether the reissue claims were materially narrowed in other respects, so that the claims may not have been enlarged, and hence avoid the recapture rule.” N. Am. Container, Inc., v. Plastipak Packaging, Inc., 415 F.3d 1335, 1349 (Fed.Cir.2005). Only a deliberate surrender of subject matter during prosecution will trigger application of the recapture rule; an inadvertent surrender will not. Kim v. Conagra Foods, Inc., 465 F.3d 1312, 1318-1319, 2006 WL 2773237, at *1 (citing cases). The majority agrees that the claims originally claimed the unconditional embodiment, that they were narrowed to exclude the unconditional embodiment, that they were broadened during reissue to again cover the unconditional embodiment, and that they were not materially narrowed during reissue in other respects. But the majority further holds that there was no deliberate surrender. I respectfully disagree.
In considering whether a deliberate surrender of subject matter has occurred, we ask whether an objective observer viewing the prosecution history would conclude that such a deliberate surrender happened in order to avoid an obstacle to patentability. Kim, 465 F.3d at 1318-1319, 2006 WL 2773237, at *7. The surrender issue is a question of law. N. Am. Container, 415 F.3d at 1349. In my view, the timing and content of Mr. Nikolai’s statements regarding claim 23, and of the examiner’s amendments to claims 15 and 16, lead to the conclusion that Medtronic deliberately surrendered the unconditional embodiment during prosecution of the original patent.
It is clear, and the majority agrees, that claims 15 and 16, as originally drafted, covered the unconditional embodiment of the invention as well as its conditional embodiment. It is undisputed that, after the examiner’s amendment to claims 15 *1380 and 16, those claims no longer covered the unconditional embodiment. The examiner’s statements made at the time of the amendment of claims 15 and 16 — characterizing the language changes as “minor wording changes” — on their face do not demonstrate a concern with patentability. However, it is quite clear that the amendments were not, in fact, minor wording changes, and the examiner stated that the amendments were necessary in order to put claims 15 and 16 “in condition for allowance.” In light of the prosecution history, the amendments to claims 15-16, in my view, were plainly directed to pat-entability.
Claim 23 of the '895 application originally included both the conditional and unconditional embodiments, as did the original language of claims 15 and 16. On September 6, 1989, the examiner rejected claim 23 as obvious in light of the Rockland and Funke prior art. Mr. Nikolai’s statements designed to overcome the rejection of claim 23 were clearly directed towards pat-entability. In his September 26, 1989, response to the examiner, Mr. Nikolai distinguished the prior art on the basis that Rockland could not “analyz[e] cardiac signals” and “selectively ... stimulate] or pac[e]” one ventricle, in other words, that the prior art did not disclose the conditional embodiment. Claim 23 was then amended to add language limiting it to the conditional embodiment.[1] Based on these representations as to the prior art and the amendment limiting the scope of claim 23 to the conditional embodiment, the claim eventually was allowed as claim 13 of the '688 patent (with minor additional language changes).
A few weeks after Mr. Nikolai’s statements concerning claim 23 and the amendment to that claim, on December 5, 1989, the examiner similarly amended claims 15 and 16 to require “determining whether ... signals ... are simultaneously present,” the very analysis function that Mr. Nikolai referred to in his claim 23 statement. The language of claims 15 and 16 was also amended, as the language of claim 23 had been amended, to make clear the conditional nature of the ventricle stimulation. Given this sequence of events, I think it is clear that the examiner’s amendment to claims 15 and 16— which the majority agrees resulted in the elimination of the unconditional embodiment and the limitation of the those claims to the conditional embodiment — was made to avoid the same prior art that had caused claim 23’s original rejection. In other words, an objective observer, viewing the prosecution history, would conclude that *1381 the unconditional embodiment was deliberately surrendered to avoid a prior art rejection of claim 23, and an analogous prior art problem in claims 15 and 16. Under these circumstances, the recapture of the unconditional embodiment in the reissue patent was improper.

. The language of claim 23 is below. Language that was added in September is indicated by underscoring, and language that was deleted is in brackets:
An atrial-coupled, bi-ventricular pacemaker for implantation or external use comprising atrial and ventricular sensing means for detecting cardiac signals, said sensing means including first and second ventricular electrodes connected in series for sensing and stimulating the right and the left ventricles, respectively, and an atrial electrode adapted to be disposed in an atrial chamber for detecting cardiac signals of the atria, all of said electrodes being connected to separate ECG amplifier means for amplifying the sensed signals; a control circuit coupled to said ECG amplifier means for analyzing the cardiac signals picked up by said sensing means and providing a control signal; and a stimulating circuit [for effecting simultaneous contractions of both ventricles in response to said control signal following a predetermined AV delay period] for producing an electrical stimulating pulse to the left ventiicle in the absence of a detected cardiac signal from the left ventricle, or to the right ventricle in the absence of a detected cardiac signal from the right ventricle, or to both ventricles in the absence of detected cardiac signals from both ventricles to effect substantially simultaneous contraction of both ventricles after a predetermhred A-V delay period.