**Mandy N. HABERMAN, Plaintiff,**

v.

**PLAYTEX PRODUCTS, INC., Gerber Products Company, and Walmart Stores, Inc. Defendants.**

No. 05–C–224–S.

United States District Court, W.D. Wisconsin.

Dec. 2, 2005.

John F. Hovel, Kravit, Hovel, Krawczyk & Leverson, Milwaukee, WI, James R. Cole, Quarles & Brady, Madison, WI, for Defendants.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Mandy N. Haberman commenced this patent infringement action alleging that defendants Playtex Products, Inc., Gerber Products Company and Wal-mart Stores, Inc. manufacture and sell non-spill cups and replacement valves which infringe her United States Patents Nos. 6,102,245 and 6,116,457. Jurisdiction is based on 28 U.S.C. § 1338. The matter is presently before the Court on the motion of defendants Playtex and Gerber for partial summary judgment that they do not infringe the '245 patent and that the '457 patent is invalid as anticipated and obvious. The following undisputed facts are relevant to the pending motion.

## BACKGROUND

Defendant Playtex manufactures and sells a line of spill-proof cups which include the "SipEase" valve. The SipEase valve is a silicone cartridge including a slitted valve membrane which is inserted into the cup. One such valve is situated just under the opening of the cup spout and controls the flow of liquid out through the spout. The valve membrane is curved inwardly such that it is convex to the interior of the cup and the direction of flow of the liquid. Defendant Gerber also manufactures and sells a line of spill-proof cups and replacement valves. The valves in its cups are similarly curved inwardly such that they are convex to the interior of the cup and the direction of flow of the liquid.

The '245 patent was issued on August 15, 2000. Its four independent claims 1, 5, 12 and 15 each include a claim element relating to the valve structure. Claim 1 includes the following element:

a valve element operatively associated with said spout, said valve element having a substantially dome-shaped region, said valve element comprising a self-closing slit valve formed in said dome-shaped region, said slit valve being arranged to open upon no more than a predetermined difference of pressure, greater within the vessel than outside, being present across said slit valve, whereby said valve element is effective to prevent flow of said drink from within said container unless a predetermined level of suction is applied to the spout, and whereby a user is able to draw said drink through the spout by the sole application of suction thereto to provide said difference of pressure.

Claims 5 and 15 include a similar element which includes "a substantially dome-shaped region" with a "slit valve" located therein.

Claim 8, which depends from claims 5, 6 and 7, adds an element concerning a second valve related to an air inlet aperture:

The drinking vessel of claim 7, wherein said second valve means has a dome-shaped region, a slit serving as a self-closing slit valve being formed in said dome-shaped region, said dome-shaped region of said second valve means being concave in the opposite sense to the dome-shaped region associated with the first mentioned valve means.

Claim 12 includes the following element:

valve means operatively associated with said spout, said valve means comprising a separate valve member positioned between said lid and said container, said valve member having a self-closing slit valve there through, said self-closing slit valve being arranged to open upon no

more than a predetermined difference of pressure, greater within the vessel than outside, being present across said slit valve, whereby said valve means is effective to prevent flow of said drink from within said container unless a predetermined level of suction is applied to the spout, and whereby a user is enabled to draw said drink through the spout by the sole application of suction thereto to provide said difference of pressure.

The '245 specification describes the invention generally at col. 1, ln. 59 to col. 2, ln. 13. This general description includes no reference to the shape of the two valves, providing only that the spout valve must permit liquid to flow out of the cup only under a predetermined amount of suction and that the air valve allow for air ingress while preventing liquid egress. The valves are described in detail at Col. 2 ln. 20–29: .

> The two valves may comprise dome-shaped regions, the larger underlying the lid in the region of the mouthpiece and being concave towards the interior of the container, and the smaller underlying the aperture and being convex towards the interior. The dome-shaped regions are provided with a simple slit or cross-cut which in effect is self-closing, in each case the slit or cross-cut allowing flow from the convex to the concave side but not in reverse direction. Other valve formations (e.g., a so-called "duck bill" or a flap valve) are feasible.

The specification describes other embodiments of the invention and provides drawings of the embodiments. Most of those embodiments include dome-shaped regions and in each case the valve associated with the dome-shaped region permits liquid flow only from the concave side to the convex side. Other embodiments describe a non-domed flat valve region, col. 5, ln. 12–14, and a flat topped "teat-configuration mouthpiece," col. 5, ln. 56–57, depicted in Figure 15.

Figure 1 of the '245 patent depicts a preferred embodiment where 18 is a dome-shaped region underlying the cup spout:

FIG. 1

Plaintiff filed a U.S. patent application in 1994, a continuation of which led ultimately to issuance of the '245 patent. Dependent claim 8 of this original application claimed a drinking vessel wherein "said valve means comprises a dome-shaped region concave towards the interior of the cup-shaped container and having a slit to allow

flow from concave to convex side but not in the opposite direction." The claims of this original application were all eventually withdrawn or rejected and the application abandoned. Among the reasons for rejection by the patent office was a finding that the prior art disclosed "dome-shaped regions, concave toward the interior." A continuing application filed October 18, 1996 canceled all previous claims and added new claims which included valve elements with no limitation as to shape.

On November 20, 1997 the Patent Office rejected the claims on the basis that they were indefinite and, among other things, anticipated by United States Patent No. 4,946,062 to Coy ("Coy Patent") and obvious under United States Patent No. 5,213,236 to Brown ("Brown patent"), et al. The office action suggested that the subject matter of a single claim 20 would be allowable if rewritten. In a May 27, 1998 response, plaintiff submitted revised claims which added the language that the valve be in a "dome-shaped region." In attempting to distinguish the claims from Coy, the plaintiff argued:

Coy discloses a container closure lid having a valved spout. The valve has an upwardly presented opening of ovoid shape. The valve further has tapered or inclined surfaces converging downwardly and meeting at the lower edge of the valve. The valve is open by application of *lip pressure* being communicated through the side walls of the spout, and transmitting through the side walls to the walls of the valve....

Contrary to Coy, claim 16, and all other independent claims, require a valve element having a generally dome-shaped region with a slit valve formed in the dome-shaped region. The slit valve opens upon a predetermined difference of pressure being present across the slit valve and whereby the pressure differ-

ence is provided by the sole application of suction thereto. Coy, however, does not disclose these limitations....

In attempting to distinguish the claims from Brown, plaintiff argued primarily that unlike plaintiff's invention Brown teaches to squeeze the walls of the container, "this is one of the problems that [plaintiff's] invention solves." The distinction was based on the use of suction in the '245 as opposed to increasing internal pressure in Brown. No mention was made concerning the shape of the valve in distinguishing the claims.

On January 29, 2000 the patent examiner allowed the present claims of the '245 patent, providing the following analysis:

The following is an examiner's statement of the reasons for allowance: the prior art of record did not disclose a cup and lid wherein said container comprises a substantially planar cover portion, a skirt surrounding said cover portion, and a dome shape valve operatively associated with said spout and having a self-closing slit valve formed in said dome-shaped region and arranged to open upon a predetermined pressure differential applied to said spout by suction thereto. The prior art of record discloses various dome-shaped valves comprising slits formed in the dome shaped region which open upon a pressure differential created by pressure to the container side walls or gravity upon the valve. It would not have been obvious to one of ordinary skill in the art to combine such teachings to render the container and valve of the instant application obvious.

The '457 patent was issued on September 12, 2000. It includes a single independent claim.

1. An article through which or from which a drinking liquid is taken by a consumer, the article having a spout

provided with a valve comprising a membrane of resiliently flexible material, said membrane being provided with at least one split adapted such that the liquid may be drawn from or through said article by the sole application of a predetermined level of suction in the region of said valve, characterized in that the membrane has a normal condition in which it is dished inwardly of the article, opposite the direction through which the drinking liquid is taken in use of the article and is adapted to close up by returning to the normal inwardly dished condition under its own resilience when such suction is removed.

The '457 specification describes the novel aspect of the invention at column 2, lines 8–15:

Slit valves have been proposed in the past, but in general, such slit valves have been dished or domed in the direction of the flow. So. far as I am aware, it has never previously been proposed to provide slit valves dished in the direction opposite to the flow direction of the liquid which they control or, more particularly, a slit valve dished in the direction contrary to the flow of liquid which it is designed to control and which also allows flow of air in the opposite direction to the liquid flow.

Plaintiff also emphasized this distinction during the prosecution of the '457 patent.

The claims submitted in the application that ultimately led to the granting of the '457 patent ("'457 application") contained no reference to operation by the sole application of suction. The original claims were rejected on the basis of anticipation and obviousness. Plaintiff added the language related to operation by the sole application of suction in an effort to overcome the prior art, particularly the Coy patent.

The Brown and Coy patents are prior art to the '245 patent. The Brown patent relates to a dispensing package for fluid products such as liquid soaps and particularly to a valve in such a product.

The valve includes a marginal flange, a valve head with a discharge orifice therein, and a connector sleeve having one end connected to the valve flange and the opposite end connects with the valve head adjacent a marginal end thereof. The connector sleeve has a resiliently flexible construction, such that when pressure within the container raises above a predetermined amount, the valve head shifts outwardly in a manner which causes the connector sleeve to double over and extend rollingly.

Brown patent abstract. Figure 10 depicts a preferred embodiment of the Brown valve.

714

FIG. 10

The Coy Patent relates to a container closure lid with a spout which includes a valve. "The valve is normally closed so as to prevent spillage from the container. In use, the valve is opened by the application of force laterally to the edge of the valve." Coy patent abstract. Figures 2 to 3B depict preferred embodiments of the lid and valve.

FIG. 2

FIG. 3

FIG. 3A

FIG. 3B

United States Patent 5,954,237 to Lampe ("Lampe patent") is prior art to the '457 patent. The Lampe patent relates to a dispensing valve closure with a self sealing dispensing valve and an inner seal for beverages. Lampe cites that valve in Brown as appropriate for use in its claimed device and incorporates the Brown

patent by reference. Col. 1, ln. 60–65. It teaches that fluids are dispensed from the device by squeezing the package. Col. 3, ln. 3–5. Figure 3 of Lampe depicts a preferred embodiment.

**FIG. 3**

## MEMORANDUM

Defendants' principal argument is that each claim of the '245 patent includes as an element a valve associated with the mouth spout which is dome-shaped and concave to the inside of the cup. Since the accused valves are convex to the inside of the cup, defendants contend that they do not infringe. Defendant Playtex argues in the alternative that if its proffered patent construction in this regard is rejected, it follows that the '457 patent must be anticipated by the '245. Defendant Gerber argues separately that the '457 patent is anticipated by the Lampe patent.

Summary judgment is appropriate when, after both parties have the opportunity to submit evidence in support of their respective positions and the Court has reviewed such evidence in the light most favorable to the nonmovant, there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), Fed.R.Civ.P. There being no factual dispute concerning the relevant structure of Defendants' accused devices, the present non-infringement issue depends solely on claim construction which is a matter of law, *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), and therefore subject to resolution on summary judgment.

*Non–Infringement of the '245 Patent*

■ Patent infringement analysis consists of two steps. First, the patent claims must be interpreted or construed to determine their meaning and scope. Second, the properly construed claims are compared to the process or product accused of infringing. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed.Cir. 1995).

■ The well established process for claim construction begins with examination of the claims language. The language is given its ordinary meaning as it would be understood by one of ordinary skill in the relevant art, given its context and the other patent claims. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed.Cir.2001). This initial construction is then considered in light of the specification to determine whether the inventor expressed a different meaning for the language, whether the preferred embodiment is consistent with the initial interpretation and whether the inventor specifically disclaimed certain subject matter. *Id.* at 1342–43. The specification takes on a more important role if the

claims language is particularly ambiguous, *id.*, or if the inventor invoked the means plus function language of 35 U.S.C. § 112, ¶ 6 thereby incorporating the specification's embodiment into the claims by reference. Finally, the interpretation is examined for consistency with the patent's prosecution history and any disclaimers made therein. 274 F.3d at 1343.

■ The critical claim construction issue is whether the phrase "dome-shaped region" as used in claims 1, 5 and 15 should be construed to require concavity to the inside of the cup or alternatively, to require the flow of liquid from the concave to the convex side of the region. Plaintiff contends that the language of the asserted claims do not literally include such limitations. Defendants argue that the claim language, when viewed in light of the specification necessarily requires the additional limitations. The competing positions require the Court to discern the "fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186–87 (Fed.Cir.1998). The Federal Circuit recently offered this advice to aid in performing the task:

> However, the line between construing terms and importing limitations can be discerned with reasonable certainty and predictability if the court's focus remains on understanding how a person of ordinary skill in the art would understand the claim terms. For instance, although the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.... That is not just because section 112 of the Patent Act requires the claims themselves set forth the limits of the patent grant, but also because persons of ordinary skill in the art rarely would confine their definitions of terms to the exact representations depicted in the embodiments.

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1323 (Fed.Cir.2005).

Careful examination of the claims language and specification leads to the inescapable conclusion that one of ordinary skill in the art would not believe that the term "dome-shaped region" includes a directional limitation. To find a directional limitation in the term would plainly be an impermissible importation of a limitation from the preferred embodiment. *See Callicrate v. Wadsworth Manufacturing, Inc.*, 427 F.3d 1361, 1368 (Fed.Cir.2005).

The disputed language of the asserted claims, "dome-shaped region," does not include any technical terms. The ordinary meaning of the phrase is "readily apparent, even to lay judges." *Phillips*, 415 F.3d at 1314. The ordinary meaning does not carry any particular directional component. There is no real dispute that the valves of the accused devices include dome-shaped regions in the ordinary sense of that term. The direction of the dome, either in reference to the interior of the cup or the direction of flow, is an additional limitation which would typically be described separately and is not inherent in the phrase dome-shaped region in any ordinary sense.

Furthermore, there is nothing in the surrounding language of the asserted claims themselves or in other claims in the patent which would suggest a directional meaning was intended. *Id.* at 1314–15. Indeed, dependent claims 8 and 10 include limitations that there be two dome-shaped regions which are concave in opposite directions, making it entirely clear that directional orientation is irrelevant to the meaning of the term "dome-shaped region".

Defendants rely primarily on the preferred embodiments of the specification in support of their claim construction position. In each instance where the specification describes a valve in a dome-shaped region the flow of liquid or air is from the concave to the convex side of the dome-shape. *See,* e.g., col. 2, ln. 27; col. 2, ln. 57–8; col. 4, ln. 27; Figs. 1,2,4 and 7. The specification never suggests flow in the opposite direction (from convex to concave). However, preferred embodiments ordinarily do not limit claims because those of skill in the art would rarely confine their definition of terms to the representations in the embodiments. *Phillips* 415 F.3d at 1323.

> Much of the time, upon reading the specification [in context as enabling and teaching a best mode] it will become clear whether the patentee is setting out specific examples of the invention to accomplish those goals, or whether the patentee instead intends the claims and the embodiments in the specification to be strictly coextensive.

*Id.*

The '245 specification leaves no doubt the patentee was providing best mode examples and not intending the claims and embodiments to be coextensive. The specification includes several examples of how to practice the invention, some of which include dome-shaped regions and others which do not. Apart from the paragraphs generally describing the inventions at col. ln 59–col. 2 ln. 13 (which include no reference to valve shape), the embodiments are prefaced by statements that the "valves may comprise" dome-shaped regions which are concave toward the interior of the cup. The specification expressly provides that "other valve formations are feasible." The preface to the discussion of the drawings expressly provides that they are "by way of example only."

The specification language also reveals that the patentee did not intend the phrase "dome-shaped region" to inherently include a direction either in relation to the cup or flow. The inventor consistently modifies the term with language specifying the direction. col. 2, ln. 20–24; ln. 39–41; ln. 57–60. It is therefore very unlikely that the inventor intended to implicitly include such a limitation when using the same term in the claims. In fact, the absence of the same type of modifying language in the claims strongly suggests that the limitation was intentionally excluded and the claim was intentionally left broad.

This conclusion is supported by the prosecution history. The claims of the original application included as a limitation "a dome-shaped region concave towards the interior of the cup-shaped container and having a slit to allow flow from concave to convex side but not in the opposite direction" thus expressly including the limitation which defendants now seek to read into the claims. The elimination of this language from the redrawn claims evidences the intent of the patentee to broaden the claims so as not to include the limitation.

It is also telling that in distinguishing the invention of the '245 patent from Brown, the patentee made no mention of the directional difference in the dome-shaped region of the valve. Brown could have been readily distinguished by the valve shape if that had been a limitation of the patent claims. Instead it was distinguished on the basis that it taught to open the valve by increasing internal pressure rather than by the reduction of external pressure through suction.

The patentee's mention of the dome-shaped region in distinguishing her claims from Coy did not rely on the direction of the dome-shape, but on the fact that the

Coy valve region was not dome-shaped at all. Furthermore, the primary basis for distinguishing Coy was the exclusive use of suction, rather than lip pressure, to activate the valve. Considered as a whole it is apparent that the patentee intentionally left the claims as broad as possible, eliminating the earlier directional limitation since it was not necessary to distinguish the invention from the prior art. The claims language, the specification and the prosecution history consistently support an interpretation which does not impose a directional limitation on the dome-shaped region.

Defendants place considerable emphasis on plaintiff's assertion during the prosecution of the '457 patent that the prior art (including the British predecessor to the '245 patent) did not teach to use a dome-shaped region convex to the direction of flow. Defendants argue that this proves that the '245 claims are limited to dome shapes concave to the direction of the flow. This argument is logically flawed because it is built on the false premise that a patent must teach everything that falls within its claims. "The scope of a patent's claims determines what infringes the patent, it is no measure of what it discloses." *In re Benno*, 768 F.2d 1340, 1346 (Fed.Cir.1985). Hence, the original 1840 telegraph patent may be broad enough to read on a modern telex, though the latter would not have been conceived of at the time of the original patent. *Id.*

■ A relatively broader patent does not estop a later improvement patent, nor does the failure of the broader patent's prosecution history to mention the specific improvement suggest that the original patent does not encompass it. *Integra Lifesciences I, Ltd. v. Merck KGaA,* 331 F.3d 860, 869 (Fed.Cir.2003). In this case the '245 claims read on, but the patent

specification does not disclose, valves comprising a dome-shaped region convex to the direction of flow.

There is an additional issue concerning non-infringement of claim 12. Defendants contend that claim 12 is written in means plus function form thereby invoking 35 U.S.C. § 112, ¶ 6, and incorporating by reference the specification's preferred embodiments. Because the preferred embodiments disclose only dome-shaped regions concave to the direction of flow, if claim 12 were a means plus function claim it would not read on defendants' products which are convex to the direction of flow.

■ The term "valve means" in claim 12, by including the term "means," invokes a presumption that the drafter intended to invoke § 112 ¶ 6. The presumption is overcome, however, if the claim element recites sufficient structure. *Allen Engineering Corp. v. Bartell Industries, Inc.,* 299 F.3d 1336, 1347 (Fed.Cir.2002). "Means-plus-function claiming applies only to purely functional limitations that do not provide structure that performs the recited function." *Phillips,* 415 F.3d at 1311. Furthermore, if the term itself has a reasonably well understood meaning in the art as the name for a structure § 112 ¶ 6 will not apply. *Allen Engineering,* 299 F.3d at 1347. For example, the terms "pivot steering box," "friction disk," "torque rod," "knuckle spring," "connecting shaft," "crank," "clutch plate," "fork", "cable", "lever arm", were all recognized as conveying sufficient structure to one of skill in the art to preclude the application of § 112 ¶ 6 even though they were followed by the word "means" in the claims. *Id.* at 1348.

■ Here the term "valve" as used in claim 12 provides sufficient structure to preclude application of § 112. In addition, more detailed structure is immediately provided as the valve means is defined as

"a self-closing slit valve." The term self-closing slit valve certainly provides sufficient structure so that it is "not a purely functional placeholder in which structure is filled in by the specification." *Phillips*, 415 F.3d at 1311. Claim 12 is not a means-plus-function claim which invokes § 112. Accordingly, infringement must be judged by the language of the claim. Because plaintiff concedes for purposes of this motion that the claim includes the element of a "dome-shaped region" the infringement analysis for claim 12 is identical to that of the other asserted claims.

*Invalidity of the '457 Patent*

■ Defendants seek summary judgment that the '457 patent is invalid as anticipated by Lampe and the '245 patent or obvious in light of Lampe. Because a patent is presumed valid, proof of invalidity must be by clear and convincing evidence. *Helifix Ltd. v. Blok–Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed.Cir.2000).

**Anticipation**

■ A claim is anticipated if a single prior art reference discloses every limitation of a patent claim sufficiently to enable a person of ordinary skill in the art to construct the invention without undue experimentation. *Id.*

■ Defendant Playtex first argues that if the '245 patent is found to read on the inwardly dished valves of the accused products then it necessarily anticipates the '457 patent. The logical flaw in this position was amply discussed in the context of the related non-infringement argument and need not be repeated in depth. Certainly, a broader patent does not anticipate improvement patents where the improvement was not disclosed in the specification of the broader claims. The fact that earlier patent claims may read on later patent claims which are an improvement on the first invention, does not mean that the latter claims are anticipated by the former.

■ Defendant Gerber also seeks summary judgement that the '457 patent claims are anticipated by Lampe. Claim 1 of the '457 patent includes the following limitation: "an article ... having a spout provided with a valve comprising a membrane..., said membrane being provided with at least one slit adapted such that the liquid may be drawn from or through such article by the sole application of a predetermined level of suction..." Claim one later provides that the inwardly dished valve return to its original shape "when such suction is removed." Lampe makes no mention of the possibility of withdrawing liquid by application of suction. It teaches only to dispense liquid by increasing the pressure within the package.

To sustain its argument for anticipation defendant Gerber contends that the limitation that liquid may be drawn "by the sole application of a predetermined amount of suction" is nothing more than an intended use and is not a structural limitation. Apart from the fact the this proposed construction would effectively render the claims language meaningless, it is directly contradicted by the prosecution history. During the prosecution of the patent the "sole operation of suction" limitation was added to overcome anticipation by Coy which taught to withdraw liquid by a combination of lip pressure or biting and suction.

Lampe does not disclose to use a valve which operates solely by suction. In fact, Lampe teaches away from that principal disclosing that the valve is operated solely by increasing internal pressure in the container by squeezing the sides. Furthermore, the Brown valve (which is also the Lampe valve) was considered by the exam-

iner during prosecution of the '457 patent without suggestion that it taught operation solely by suction. Lampe added nothing to Brown concerning operation by suction.

**Obviousness**

■ A claim is obvious under 35 U.S.C. § 103 when "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time of the invention to a person having ordinary skill in the art." The ultimate issue of obviousness has been termed an issue of law. However, its determination is dependent on a series of factual issues as set forth in *Graham v. John Deere Co.,* 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). Those inquiries are as follows: (1) determining the scope and content of prior art; (2) comparing the differences between the prior art and the claims at issue; (3) determining the level of ordinary skill in the art; and (4) considering objective evidence of obviousness or nonobviousness. *Miles Laboratories, Inc. v. Shandon, Inc.,* 997 F.2d 870 (Fed.Cir.1993). When a defendant argues that a combination of prior art references renders the patented invention obvious, the defendant has the burden to establish some motivation in the prior art for one of ordinary skill in the art to make the combination. *In re Rouffet,* 149 F.3d 1350, 1357 (Fed.Cir.1998).

■ The issue here is whether it would have been obvious to one of ordinary skill in the art to combine the convex-to-flow valve from the squeeze bottle prior art of Brown and Lampe with the teachings of trainer cup prior art to produce the suction operated vessel of the '457 patent. The evidence presented on this motion is insufficient to find by clear and convincing evidence that this combination was obvious as a matter of law. While defendant Gerber has compared the invention with the prior art it has provided virtually no evidence relevant to the motivation to combine, or to overcome objective evidence of non-obviousness. Concerning the motivation to combine, Brown and Lampe each teach away from creating a pressure differential by operation of suction teaching instead to increase internal pressure by squeezing the container.

Among the objective factors which tend to support a finding of non-obviousness are commercial success and copying of the invention by others. *Panduit Corp. v. Dennison Mfg. Co.,* 810 F.2d 1561, 1569 (Fed. Cir.1987). Evidence provided by plaintiff suggests that she has successfully licensed the invention to others and that defendant Playtex copied the invention for use in its competing products. Defendant Gerber offers nothing to counter this evidence or to suggest alternative reasons for the invention's success other than its novelty. While defendants may be able to demonstrate obviousness at trial, the evidence presently before the Court presents factual issues which preclude summary judgment.

## ORDER

IT IS ORDERED that defendants' motions for summary judgment are DENIED.