Note:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-1490, -1516

MANDY N. HABERMAN

Plaintiff-Appellant,

v.

GERBER PRODUCTS COMPANY,

Defendant-Cross Appellant.

H. Michael Hartmann, Leydig, Voit, & Mayer, Ltd., of Chicago, Illinois, argued for plaintiff-appellant.  With him on the brief were Gregory C. Bays and Phillip M. Pippenger.

Matthew G. Reeves, Locke Liddell & Sapp LLP, of Houston, Texas, argued for defendant-cross appellant.  With him on the brief was Michael O. Sutton.

Appealed From: United States District Court for the Western District of Wisconsin

Judge John C. Shabaz

# United States Court of Appeals for the Federal Circuit

2006-1490, -1516

MANDY N. HABERMAN,

Plaintiff-Appellant,

v.

GERBER PRODUCTS COMPANY,

Defendant-Cross Appellant.

_____

DECIDED:  May 29, 2007

_____

Before MICHEL, Chief Judge, GAJARSA, Circuit Judge, and ROBINSON, Chief District Judge.*

ROBINSON, Chief District Judge.

This is a patent infringement case dealing with spill-proof drinking containers for children and infants, commonly referred to as "sippy cups."  Plaintiff-appellant Mandy N. Haberman ("Haberman") appeals the entry of final judgment that U.S. Patent No. 6,116,457 ("the '457 patent") is invalid as anticipated following a jury trial in the United States District Court for the Western District of Wisconsin.  Gerber Products Company ("Gerber") cross-appeals the judgment of infringement.  Gerber also cross-appeals the district court's denial of its motion to amend its answer and pleadings to assert an

---

*        Honorable Sue L. Robinson, Chief Judge, United States District Court for the District of Delaware, sitting by designation.

inequitable conduct counterclaim, and the denial of attorney fees. Because we believe that the district court incorrectly concluded that a reasonable jury could find that the '457 patent is invalid as anticipated, we reverse the judgment of invalidity and remand for a determination on obviousness. Because we find that the jury had before it evidence sufficient to support its finding of no infringement, we vacate the district court's grant of judgment as a matter of law on this issue and remand with instructions to enter judgment on the verdict. We further conclude that the district court did not err in denying Gerber's motion for leave to amend its pleadings or in refusing to grant Gerber attorney fees, and affirm on those grounds.

## I.  BACKGROUND

### A.  The Technology and Patent

The '457 patent covers a spill-proof trainer, or sippy cup, invented by Haberman, who also owns the patent. The sippy cup contains a lid that is fitted to the open top of a cup-shaped container. The lid contains an upwardly-projecting mouthpiece with an opening. The '457 patent provides an improved slit valve that prevents the flow of liquid from the interior of the cup through the mouthpiece unless a predetermined level of suction is applied, thereby avoiding spills that would occur when the cup is shaken or dropped by a child. The slit valve has a flexible membrane which is dished in the direction opposite to the flow direction of the liquid. In normal conditions, the dished membrane is closed under its own resilience. Upon the application of suction on the mouthpiece, the flexible membrane opens, allowing the free flow of liquid through the mouthpiece.

2006-1490, -1516

Claim 1, the only independent claim, reads:

> An article through which or from which a drinking liquid is taken by a consumer, the article having a spout provided with a valve comprising a membrane of resiliently flexible material, said membrane being provided with at least one split **adapted such that the liquid may be drawn from or through said article by the sole application of a predetermined level of suction** in the region of said valve, characterized in that the membrane has a normal condition in which it is dished inwardly of the article, opposite the direction through which the drinking liquid is taken in use of the article and is adapted to close up by returning to the normal inwardly dished condition under its own resilience when such suction is removed.

'457 patent col.4 ll.16-28 (emphasis added). The application that eventually issued as the '457 patent, filed September 2, 1996, did not recite the "sole application of a predetermined level of suction" limitation in claim 1. The examiner rejected the claims as being anticipated by British Patent No. 2,279,130, which generally describes a leakage-resistant valve with deformable closure elements, and as obvious in view of a combination of references. In response, Haberman added the limitations that the slit is adapted such that the liquid may be drawn through it "by the sole application of a predetermined level of suction," and that the valve "is adapted to close up under its own resilience when such suction is removed." Thereafter, Haberman further limited the independent claim to require that the valve comprises a "membrane of resiliently flexible material." The examiner subsequently issued a Notice of Allowability, and the '457 patent issued on September 12, 2000.

## B. The Accused Product and the Prior Art

Gerber sells a line of spill-proof sippy cups for infants, as well as replacement valves for use in its cups. Gerber's sippy cups utilize a valve which curves inwardly such that it is convex to the interior of the cup. The district court found that Gerber uses

3

a valve as described in U.S. Patent No. 5,954,237 to Lampe ("Lampe" or "the Lampe patent") as the valve for its sippy cups.[1] Lampe discloses a container for holding liquids which is "particularly suited to the food and beverage industry, and in particular for fluids such as isotonic and non-isotonic sports drinks." Lampe patent col.1 ll.59-65. The invention of Lampe relates "particularly to a dispensing valve closure with an inner seal," which is advantageous to maintain product integrity and protect from leakage. Lampe patent col.1 ll.5-6; col.2 ll.1-4. Lampe teaches that "any suitable self-sealing valve" can be used, a particular example being the valve described in U.S. Patent No. 5,213,236 to Brown ("the Brown patent" or "Brown"), which patent is incorporated by reference. Brown discloses a self-sealing dispensing valve for packaging ("the Brown valve"), which is useful for viscous products such as soaps, shampoos, detergents, cleaners, and the like. The Brown valve includes a marginal flange that seals an opening of the container, a valve head with an orifice which opens and closes in response to the application and release of pressure, and a connector sleeve between the valve flange and valve head. Brown patent col.2 ll.32-41.

## C. The Litigation Below

Haberman filed suit against Gerber, Playtex Products, Inc. ("Playtex"), and Wal-Mart Stores, Inc. ("Wal-Mart") in the United States District Court for the Western District of Wisconsin for infringement of U.S. Patent Nos. 6,102,245 ("the '245 patent") and the '457 patent. Haberman reached settlement with Playtex and Wal-Mart, dismissed them from the suit, and subsequently proceeded against Gerber.

---

[1] For purposes of trial, the parties classified Gerber's accused cups into four categories represented by four exemplary cups, which were introduced into evidence. In addition, Gerber introduced at trial its own patent, which depicts its accused cups.

4

On October 14, 2005, Gerber filed two separate motions for summary judgment, seeking: (1) a declaration of non-infringement of independent claims 1, 5, 12, and 15 of the '245 patent; and (2) judgment that claims 1-2 and 4-6 of the '457 patent are invalid as anticipated by Lampe or, alternatively, invalid as obvious in view of Lampe alone or "in combination with other prior-art." In denying both motions, the district court specifically found that Lampe did not anticipate the claims of the '457 patent because "Lampe does not disclose to use a valve which operates by the sole application of suction." Haberman v. Playtex Products, Inc. et al., 403 F. Supp. 2d 708, 719 (W.D. Wis. Dec. 2, 2005). The court further noted that "[i]n fact, Lampe teaches away from that principle disclosing that the valve is operated solely by increasing internal pressure in the container by squeezing the sides." Id.

Also on October 14, 2005, Gerber filed a motion to file a second amended answer and counterclaims, wherein Gerber sought to allege unenforceability of Haberman's patents due to inequitable conduct before the United States Patent and Trademark Office ("PTO"). The district court denied Gerber's motion on October 26, 2005, stating that granting the motion would prejudice Haberman, as Gerber "had the necessary facts to proceed with its motion to amend well before the present motion was filed."

The case was tried before a jury on December 19-20, 2005. Commensurate with their respective burdens of proof, Haberman presented expert testimony on infringement and Gerber advanced several invalidity arguments. More specifically, Gerber asserted at trial that: (1) the patents are obvious in view of U.S. Patent No. 5,186,347 ("Freeman et al.") in combination with U.S. Patent No. 5,071,017 to Stull

5

("the '017 patent"); and (2) the '457 patent is invalid as anticipated by Lampe.[2]  Prior to deliberations, the court instructed the jury to "give the language of the terms its ordinary meaning based on your understanding."  Specifically with respect to the '457 patent, the court instructed the jury that the "sole application of suction" limitation of claim 1 "means that it is possible for a user to draw the drink from the vessel using only suction."  The jury returned a verdict that neither asserted patent was infringed, and that claim 1 of the '457 patent is invalid as anticipated.  Pursuant to its instructions, the jury did not reach the question of obviousness.

In its memorandum and order dated May 24, 2006, the district court found that the jury's verdict of anticipation, but no infringement, was contrary to the axiom of "that which infringes if later in time, anticipates if earlier in time."  Upsher-Smith Labs., Inc. v. Pamlab, L.C.C., 422 F.3d 1319, 1322 (Fed. Cir. 2005); Haberman v. Gerber Products Co., No. 05-C-224-S (W.D. Wis. May 24, 2006) ("JMOL Order").  In an effort to reconcile this inconsistency, the district court first found that "the issue of anticipation was properly resolved by the jury as a question of fact and its determination was amply supported by the facts at trial."  JMOL Order at 10.  Specifically, the district court concluded that Haberman was not entitled to relief because claim 1 of the '457 patent is invalid as anticipated by Lampe.  Having previously concluded that Lampe did not expressly teach a valve membrane "with at least one slit adapted such that the liquid

[2]    Gerber presented evidence on invalidity through its expert, Gene Stull ("Stull"), inventor of the '017 patent.  Stull did not specifically testify about Lampe, but did generally testify about the Brown valve.  Haberman objected to the inclusion of Gerber's argument that the '457 patent is invalid as anticipated by Lampe in the special verdict form and jury instructions, arguing that Stull's testimony was not affirmative evidence of anticipation.  Her objection was overruled.  Haberman's motion for JMOL was also overruled prior to submission of the case to the jury.

6

2006-1490, -1516

may be drawn from or through said article by the sole application of a predetermined level of suction" limitation, the district court concluded that Lampe taught this limitation inherently.

The district court then found that, "[a]s a matter of law[,] defendant's device has a 'membrane,' that is 'inwardly dished' and returns to its condition 'under its own resilience.'" Id. at 9. The district court rejected Gerber's arguments that its valve is not "inwardly dished" because it is "top hat shaped" and returned to its original shape, not "under its own resilience" but based on "energy stored in the valve." Id. at 9. The district court concluded that "the defendant's device infringes as a matter of law, the jury's verdict in that regard was wrong as a matter of law and plaintiff is entitled to a determination of infringement." Id. at 10.

Finally, the district court denied Gerber's motion for attorney fees, noting that the case was "a typical hard fought patent infringement case." Haberman appeals the district court's final judgment denying her motion for JMOL as to anticipation, and requests that we direct the district court to enter judgment as a matter of law that claim 1 of the '457 patent is not anticipated and is infringed, and remand for further proceedings. Gerber cross-appeals the district court's grant of JMOL of infringement, and requests that we uphold the district court's finding of invalidity of the '457 patent. Gerber further seeks review of the district court's denial of its motions for leave to file its second amended answer and counterclaims, and for attorney fees. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

7

## II. DISCUSSION

### A. Invalidity

This court reviews a grant or denial of JMOL without deference by reapplying the JMOL standard. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1454 (Fed. Cir. 1998) (en banc); Fed. R. Civ. P. 50(a)(1). For matters submitted to and decided by a jury, this court will affirm a grant or reverse a denial of JMOL only "if the jury's factual findings are not supported by substantial evidence or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings." Cybor Corp., 138 F.3d at 1454. Because the denial of a JMOL motion is not specific to patent law, the law of the regional circuit applies. Harris Corp. v. Ericcson Inc., 417 F.3d 1241, 1248 (Fed. Cir. 2005). The Seventh Circuit reviews a denial of a motion for JMOL de novo, viewing all the evidence in the light most favorable to the non-movant. Wabanascum v. Shawano Cty., 416 F.3d 658, 664 (7th Cir. 2005) (citations omitted). Applying this standard, we examine the record as a whole to determine whether there was sufficient evidence from which a reasonable jury could have returned the verdict, and do not reweigh this evidence nor substitute our own credibility determinations for those of the jury. Id. (citations omitted).

The district court correctly noted that Lampe does not expressly state that its valve can be operated "by the sole application of a predetermined level of suction."[3] In

---

[3] We are not persuaded by Gerber's argument that this language is a statement of intended use which does not limit the claim. As an initial matter, Haberman overcame prior art rejections during prosecution by adding this description of a membrane slit with a particular function, i.e., one that allows liquid to be drawn through it "by the sole application of a predetermined level of suction," without respect to other means. Haberman was permitted to use functional language to limit the claims. K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1363 (Fed. Cir. 1999) ("[F]unctional

8

order to have found anticipation, therefore, the jury must have determined that Lampe inherently taught this limitation. For the description of its valve, Lampe incorporated the Brown patent by reference. Brown was before the examiner during prosecution of the '457 patent, and did not form the basis for any rejection. See Glaxo Group Ltd. v. Apotex, Inc., 376 F.3d 1339, 1348 (Fed. Cir. 2004) (stating that a challenger's "burden is 'especially difficult' when . . . the infringer attempts to rely on prior art that was before the patent examiner during prosecution").

Notwithstanding, in support of its conclusion of inherent anticipation, the district court found that "the testimony made it clear that it was a matter of basic physics, which those of skill in the art would know, that sucking and squeezing would have equivalent effects on the Lampe valve." The district court found the testimony of Gerber's witness Timothy Socier ("Socier") to be the "most persuasive testimony on the topic." Specifically, Socier testified that squeezing a container and sucking on the outside produces the same result:

> The valve functions based on differential pressure on one side of the valve to another. If you think about a squeeze bottle, a bottle of Heinz ketchup, for example, and the consumer is going to squeeze the container. They're squeezing the bottle which is creating a higher pressure on the inside of the bottle and as a result there's a lower pressure, atmospheric pressure is lower and so product is going to flow through the valve. On the same measure if you think of a child's sippy cup, they are sucking on the outside. The inside of the container is at atmospheric pressure and the vacuum is a lower pressure so basically that lower pressure is going to draw the product through the valve. Basic physics.

Similarly, Stull, Gerber's expert, testified that the valve "really understands one thing and that is a differential in pressure and that could be created in any number of ways . . . squeezing, shaking, sucking, pushing . . . ."

language is, of course, an additional limitation in the claim.").

9

The testimony of both Socier and Stull, as with that of Haberman's expert, Dr. Peter Weiss, was focused on the question of obviousness, rather than anticipation. Nevertheless, the district court noted that the testimony of the experts was "remarkably consistent on the issue of whether one of skill in the art would have known that Lampe could be operated solely by suction," placing emphasis on the purported "concession" of Dr. Weiss that Lampe disclosed a valve which would open under a predetermined level of suction. Upon review, however, Dr. Weiss's testimony regarding whether Lampe disclosed that it could be operated by suction is unclear. Weiss first stated that this limitation is "shown" in Lampe, but he then immediately backtracked and stated that Lampe does not disclose the limitation.[4]

---

[4]  The exchange proceeded as follows:

Q.  ["]By the sole application of a predetermined level of suction in the region of the valve. Is that element shown in the Lampe [p]atent 5,954,237?
A.  It's shown.
Q.  Or disclosed in?
A.  I don't see anything of sucking in claim 1 of Lampe.
                              * * *
Q.  I'm not asking about the Lampe claim, sir. I'm just asking you if that would be something that a person of ordinary skill in the art would realize is meant by reading the disclosure of the Lampe '237 patent?
A.  No.
. . .
Q.  So a person of ordinary skill in the art reviewing Lampe would not realize in your opinion that liquid may be drawn from the article by the sole application of suction?
A.  No, I don't believe it does, sir. And the reason I say that is because this – the way, again as a person of some skill in this art reading this would see that one of the essences of Lampe's patent is that there is a seal at the top so it can be held on a shelf without either being tampered with or deteriorating. And I also understand that that valve as we see there has been taken directly from one of the Brown patents.

In its opinion, the district court did not point to any actual evidence presented by Gerber that a user applying only suction could actually achieve the pressure differential necessary to open the Brown valve. Indeed, no evidence was introduced at trial regarding the quantum of pressure necessary to allow the Brown valve to open by squeezing the outside of the container, or the amount of pressure that oral suction can generate. At most, the testimony of Socier and Stull demonstrates that applying a predetermined level of oral suction <u>may</u> result in the drawing out of liquid via the Brown valve. Such evidence falls short of clear and convincing evidence that a valve operable by the sole application of a predetermined level of suction is necessarily present in Lampe or, stated another way, that applying a predetermined level of suction to the Lampe valve would inevitably result in the drawing out of liquid. <u>See</u> <u>Continental Can Co. v. Monsanto Co.</u>, 948 F.2d 1264, 1268 (Fed. Cir. 1991) (extrinsic evidence used to fill a gap in a reference "must make clear that the missing descriptive matter is necessarily present in the thing described in the reference, and that it would be so recognized by persons of ordinary skill") (citations omitted); <u>In re Oelrich</u>, 666 F.2d 578, 581 (C.C.P.A. 1981) (inherency "may not be established by probabilities or possibilities. The mere fact that a certain thing may result from a given set of circumstances is not sufficient.") (quotation omitted). In fact, Gerber's statements to the PTO in prosecuting its own patents lend support to the proposition that certain valves, such as the Brown valve, are incapable of operating by suction alone.[5] Because Gerber did not introduce

---

[5] During prosecution of U.S. Patent No. 5,890,621, Gerber distinguished U.S. Patent No. 5,439,143 to Brown, a continuation of Brown '236, by stating that squeeze containers such as Brown "fundamentally teach directly away from a drinking cup constructed for use by young children." More specifically, Gerber distinguished over the prior art by stating that squeeze containers are "not constructed to permit flow

sufficient evidence from which a reasonable jury could have found that the Brown valve was necessarily operable by suction, we reverse the judgment of anticipation with respect to the '457 patent. The case is remanded for a jury determination on obviousness.

## B. Infringement

The district court granted JMOL in favor of Haberman in an attempt to harmonize what it perceived to be an inconsistent verdict. The parties dispute whether Gerber's product has a valve with a "membrane" which is "dished inwardly" and which is adapted to return to the inwardly dished condition "under its own resilience." The district court did not construe these limitations in a Markman proceeding, and no argument was made with respect to their meanings in connection with proposed jury instructions.[6] Prior to its deliberations, the jury was instructed to "give the language of the terms its ordinary meaning based on your understanding." Applying this standard, the jury found no infringement.

An infringement analysis involves a two-step process: claim construction, followed by comparison of the claims to the accused device. N. Am. Container, Inc. v. Plastipak Packaging, Inc., 415 F.3d 1335, 1344 (Fed. Cir. 2005). Because the district court had not previously defined the term "membrane," the district court iterated its own

through a spout in response to a vacuum within the spout." "Still further," Gerber argued, "squeeze-bottle arrangements dispense fluid upon pressurization of the fluid, not in response to a vacuum within a spout." Though Gerber is not estopped from making contrary arguments in this context, Gerber's statements nonetheless indicate that distinct differences exist between sucking and squeezing applications.

[6] The parties do not indicate whether the district court held a Markman hearing in this case, though it is clear that neither party identified these terms as disputed or requested construction of these terms prior to trial.

12

definition for that term prior to its post-trial evaluation of the evidence regarding Gerber's cups. In so doing, the district court stated that a "membrane," as used in claim 1, "generally means a relatively thin sheet of material," because "membrane" and "sheet" are used interchangeably in the '457 patent specification. According to the district court, this membrane, contrary to Gerber's assertion, can have a variance in thickness since "[n]othing in the ordinary meaning of the term membrane or in the patentee['s] use of the term in the specification suggests [otherwise]." See JMOL Order at 9. Aside from discrediting Gerber's argument that a membrane cannot have a variable thickness, the district court did not rely on Dr. Weiss's testimony or on any other evidence of record in finding that the Gerber cups have a "membrane."

The district court also found that "[t]here is no reasonable argument that the valve [of Gerber's product] is 'inwardly dished' as that term is used in the ['457] patent." Id. The district court characterized Stull's expert testimony as a "baseless opinion," and characterized as "nonsense" Gerber's suggestion that there is a distinction between a valve returning to its original shape based on "energy stored in the valve" versus its own resilience. Id. Having found that Gerber's valve "undeniabl[y]" returns to its original shape by its own resiliency, the district court vacated the jury verdict and held that Gerber's product infringes as a matter of law. Id. at 9-10.

We review the district court's grant of JMOL without deference. See Cybor Corp., 138 F.3d at 1454. We do recognize, however, that this was a case where the parties failed either to recognize or identify the specific issues in dispute and, therefore, failed to present specific evidence related to these issues. On direct examination, Haberman's expert, Dr. Weiss, testified that Gerber's product has an inwardly dished

2006-1490, -1516

valve that, under normal conditions, opens when suction is applied, and returns to its inwardly dished condition under its own resilience when the suction is removed. Dr. Weiss did not provide any further explanation for his conclusion. See Ashland Oil v. Delta Resins & Refractories, 776 F.2d 281, 294 (Fed. Cir. 1985) ("Lack of factual support for expert opinion going to factual determinations, however, may render the testimony of little probative value in a validity determination.") (emphasis added). In Gerber's rebuttal case, Stull told the jury that Gerber's products do not infringe the "membrane" limitation because the Brown valve used in the Gerber product is not a "thin sheet of material" and has "varying wall thicknesses." Stull did not buttress this opinion with any explanation or scientific proof. See id. Socier used a demonstrative to illustrate the "rolling sleeve" action of the Brown valve, and testified that the Brown valve has four basic components: the valve flange, the valve itself (or rolling sleeve), the valve head, and the slit. By implication, these components constitute more than a uniformly thin sheet of material. Stull also testified that the Brown valve has a "top hat" shape which is not "inwardly dished," as the '457 patent claims require. Stull briefly explained that the Brown valve does not return to its original shape under its own resilience, but as the result of "stored energy that's built up or created in the side walls of that valve."

In view of the highly conclusory nature of the evidence adduced at trial, the district court was left to the unenviable task of sorting through the record in an attempt to salvage the verdict, i.e., to justify the time and resources both the court and jury spent on the case. The district court was not required to assume that the jury believed Gerber's vindicable testimony or gave it the same weight as Dr. Weiss's testimony.

14

Comark Comm., Inc. v. Harris Corp., 156 F.3d 1182, 1192 (Fed. Cir. 1998).  The district court, however, was required to evaluate the totality of the evidence before the jury in examining whether a reasonable jury could have found for Gerber.  See Princeton Biochem., Inc. v. Beckman Coulter, Inc., 411 F.3d 1332, 1336 (Fed. Cir. 2005) ("This court must also consider all the evidence before the jury and draw all reasonable inferences in favor of the prevailing party on that issue, i.e., the non-movant." (citing Richardson-Vicks Inc. v. Upjohn Co., 122 F.3d 1476, 1479 (Fed. Cir. 1997))); Tex. Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1563 (Fed. Cir. 1996) (substantial evidence required to overturn jury's findings on JMOL is "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review").  Having been instructed to "give the language of the terms its ordinary meaning based on your understanding," the jury was free to apply Stull's description of a "membrane" if it were consistent with the jury's understanding.  Likewise, the jury may have found that the ordinary meaning of "inwardly dished" precluded a "top hat shaped" valve, or credited Stull's testimony that returning to the inwardly dished condition "under its own resilience" did not encompass situations where the membrane moves due to stored energy in the valve walls.  Drawing all reasonable inferences from the testimony in Gerber's favor, the jury may have found the testimony of Gerber's witnesses more credible on either issue.  That is, the jury's verdict may have stemmed from a finding that Dr. Weiss's conclusory testimony did not create a prima facie case of infringement, or that Stull's and/or Socier's testimony, even if conclusory, sufficiently rebutted Haberman's prima facie showing of infringement.  Because we find that the district court erred in concluding that no reasonable jury could

15

2006-1490, -1516

have reached a verdict of no infringement, we vacate the district court's grant of JMOL on this issue and direct it to enter a judgment of non-infringement in favor of Gerber.[7]

## C. Leave to File an Amended Answer and Counterclaims

Gerber appeals the district court's denial of leave to amend its pleadings to file a second amended answer and assert counterclaims related to unenforceability and inequitable conduct. We apply the procedural law of the Seventh Circuit,[8] which reviews denials of leave to amend a pleading for abuse of discretion. Dubicz v. Commonwealth Edison Co., 377 F.3d 787 (7th Cir. 2004). In so doing, we conclude that no such abuse is present here. This case was filed in the district court on April 13, 2005. Gerber asserted a third affirmative defense of inequitable conduct in its answer; however, it filed an amended answer on June 10, 2005 in which this allegation was removed and substituted with a laches defense. Gerber's second motion to amend, therefore, was in essence one of reinstatement. Gerber filed the motion at issue on

---

[7]    Haberman's position that "Gerber's entire non-infringement case to the jury was based on re-interpreting the claims away from their plain and ordinary meaning[s]" is belied by the fact that Haberman failed to seek claim constructions for the crucial terms of its claims. The district court did not err in not construing the claim terms. See Sulzer Textil A.G. v. Picanol N.V., 358 F.3d 1356, 1367 (Fed. Cir. 2004) ("[W]hen the parties do not dispute the claim language, but just tell the jury to use the 'plain meaning,' the district court is not required to add an additional layer of complexity by 'constructing' the words of the claim merely to reiterate those words in a jury instruction." (citing United States Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1567 (Fed. Cir. 1997))). Having concluded that a reasonable jury could have returned a verdict of no infringement, Gerber's argument that Haberman did not properly appeal the issue of whether the district court erred in not granting a new trial is moot, as are its arguments regarding the propriety of the district court's post-trial construction of the term "membrane" in view of the '457 patent specification.

[8]    Leave to amend is a procedural matter not unique to patent law, and this court applies the law of the regional circuit to review denial of leave to amend. See Ferguson Beauregard/Logic Controls, Div. of Dover Resources, Inc. v. Mega Sys. LLC, 350 F.3d 1327, 1342 (Fed. Cir. 2003).

16

October 14, 2005, the day before the summary judgment deadline. Despite the court's prompt resolution of the issue, at that time less than 30 days remained before the close of discovery on November 23, 2005. Haberman v. Playtex Products, Inc. et al., No. 05-C-224-S (W.D. Wis. October 26, 2005) (order denying motion to amend).

Gerber alleges that it was inequitable conduct to have failed to alert the PTO that the '245 and '457 patents were copending with different examiners. Gerber's assertion that it needed discovery, more specifically, the deposition of Haberman's prosecuting attorney, to confirm this omission is baseless. A simple review of the patents' file wrappers would have confirmed the absence of such disclosure to either examiner in response to office actions or during interviews. The district court correctly noted that Gerber "had the necessary facts to proceed with its motion to amend well before the present motion was filed." Id. Gerber did not need to confirm the lack of counter-evidence of good faith to proceed with its motion, nor did it need the opinion of its expert, as Gerber claims. With just a few weeks left in discovery, Haberman could not have propounded discovery on Gerber's claim under Federal Rule of Civil Procedure 30 or 34. In addition, even if it were practical for Haberman to both investigate and rebut Gerber's counterclaim in less than 30 days, such as by the submission of rebuttal expert reports, Gerber's argument ignores the fact that Haberman would have been precluded from challenging Gerber's counterclaim by summary judgment. We find that the district court's authority to manage discovery is broad enough to place this ruling within its sound discretion.

2006-1490, -1516

**D.    Attorney Fees**

Gerber appeals the trial court's refusal of attorney fees under 35 U.S.C. § 285, which provides that reasonable attorney fees may be awarded by the court in exceptional cases. This court applies Federal Circuit law to the issue of attorney fees in patent infringement cases. Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1343 (Fed. Cir. 2001). This court reviews a denial of attorney fees under 35 U.S.C. § 285 for an abuse of discretion, but reviews the factual determination of whether a case is exceptional under § 285 for clear error. Serio-US Indus. v. Plastic Recovery Techs. Corp., 459 F.3d 1311, 1321 (Fed. Cir. 2006) (citing Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1328 (Fed. Cir. 2003)).

Gerber argues that the district court committed clear error by denying its motion for attorney fees. Specifically, Gerber argues that since it was precluded from presenting evidence on inequitable conduct, the district court did not have before it those "facts most relevant to the determination of exceptionality." Since the district court did not err in precluding Gerber's belated inequitable conduct defense and counterclaim, we find no error in the district court's finding that this case was not exceptional.

### III.    CONCLUSION

For the aforementioned reasons, we reverse the judgment of invalidity and remand for a determination on obviousness. We vacate the court's grant of JMOL on infringement, and direct it to enter a judgment of non-infringement in favor of Gerber. We affirm the district court's denial of Gerber's motion for leave to amend its pleadings and refusal to grant Gerber attorney fees.

18

2006-1490, -1516

AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART, and REMANDED.

2006-1490, -1516